**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| INTRABIO INC. and INTRABIO LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>TESSERACT MEDICAL RESEARCH, LLC, TESSERACT MEDICAL RESEARCH MIDCO, INC., and TESSERACT HOLDING, LLC,<br><br>Defendants. | ) | C.A. No.______________<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

IntraBio Inc. and IntraBio Limited ("IntraBio" or "Plaintiffs") allege against Defendants Tesseract Medical Research, LLC, Tesseract Medical Research MidCo, Inc., and Tesseract Holding, LLC ("Tesseract" or "Defendants") the following:

1. IntraBio is a pharmaceutical company that specializes in the testing and development of novel and repurposed drugs. IntraBio has pioneered the pharmaceutical industry with techniques, supplements, and treatment applications addressing serious diseases and conditions, including as neurodegenerative diseases such as lysosomal storage disorders ("LSDs"), Alzheimer's disease, traumatic brain injuries ("TBIs") and Parkinson's disease, as well as migraines, restless leg syndrome ("RLS"), and decreased cognitive functioning associated with ageing.

2. For example, IntraBio's product portfolio includes the new drug product AQNEURSA®.[1] AQNEURSA was recently approved by Food and Drug Administration to treat Niemann-Pick disease type C ("NPC"), a rare and devastating neurological disease that leads to

---

[1] *See* https://www.aqneursa.com/.

progressive neurological symptoms such as decline in ambulation, fine motor skills, speech, swallowing, and cognition.

3. IntraBio owns a patent portfolio covering a wide range of treatments, techniques, and applications in the health and pharmaceutical space. This case involves IntraBio's patented technologies enshrined in U.S. Patent Nos. 11,400,067 ("the '067 Patent"), 11,471,434 ("the '434 Patent"), 11,660,279 ("the '279 Patent"), and 12,144,792 ("the '792 Patent") (collectively, "the Asserted Patents" or "The IntraBio Patents").

**NATURE OF THE CASE**

4. Plaintiffs bring claims under the patent laws of the United States, 35 U.S.C. § 1, et seq., for infringement of the Asserted Patents, as well as the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02. Defendants have infringed and continues to infringe each of the Asserted Patents under at least 35 U.S.C. §§271(a), 271(b) and 271(c).

**THE PARTIES**

5. Plaintiff IntraBio Inc. is a Delaware corporation, having a principal place of business at 201 W 5th Street, Suite 1100, Austin, Texas 78701. The Austin office serves as the global headquarters of IntraBio. Plaintiff IntraBio Inc. is the holder of New Drug Application No. 219132 for AQNEURSA and markets, distributes, and sells AQNEURSA in the United States.

6. Plaintiff IntraBio Limited is a United Kingdom private limited company with registered office located at Summit House, 170 Finchley Road, London, NW3 6BP. It is the owner by assignment of each of the Asserted Patents, and it is a wholly owned subsidiary of IntraBio Inc.

7. On information and belief, Defendant Tesseract Medical Research, LLC is a limited liability company organized and existing under the laws of Delaware, having a principal place of business at 1370 Trancas St., Suite 376, Napa, California, 94558. (*See*

https://tessmed.com/privacy-policy/;

https://icis.corp.delaware.gov/ecorp/entitysearch/NameSearch.aspx;

https://bizfileonline.sos.ca.gov/search/business.)

8. On information and belief, Defendant Tesseract Medical Research MidCo, Inc. is a corporation organized and existing under the laws of Delaware, having a principal place of business at 1370 Trancas St., Suite 376, Napa, California, 94558.

9. On information and belief, Defendant Tesseract Holding, LLC is a limited liability company organized and existing under the laws of Delaware, having a principal place of business at 1370 Trancas St., Suite 376, Napa, California, 94558.

## JURISDICTION & VENUE

10. This action arises under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq*. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

11. This Court has personal jurisdiction over Defendants Tesseract Medical Research, LLC, Tesseract Medical Research MidCo, Inc., and Tesseract Holding, LLC because they are all incorporated in the State of Delaware.

12. On information and belief, Defendant Tesseract Medical Research, LLC's, registered agent for service of process is Delaware Corporate Services Inc., located at 919 N Market St., Suite 725, Wilmington, Delaware 19801.

13. On information and belief, Defendant Tesseract Medical Research MidCo, Inc.'s, registered agent for service of process is Capitol Services, Inc., located at 108 Lakeland Ave., Dover, Delaware 19901.

14. On information and belief, Defendant Tesseract Holding, LLC's registered agent for service of process is Delaware Corporate Services Inc., located at 919 N Market St., Suite 725, Wilmington, Delaware 19801.

15. This Court has personal jurisdiction over Tesseract because this suit arises out of and relates to Tesseract's activities that are, and will be, directed to this Judicial District.

16. The Court has personal jurisdiction over Tesseract because, among other things, Defendants are entities incorporated in the State of Delaware and have purposefully availed themselves of the benefits and protections of Delaware's laws such that they should reasonably anticipate being haled into court here. On information and belief, Tesseract develops, manufactures, imports, markets, offers to sell, and/or sells dietary supplement products, throughout the United States, including in the State of Delaware, and therefore transacts business within the State of Delaware, and/or has engaged in systematic and continuous business contacts within the State of Delaware.

17. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(b) because Tesseract is a limited liability company incorporated in and organized and existing under the laws of Delaware, has regular and systematic contacts in this District, and has committed acts of infringement within this District.

18. Tesseract promotes, recommends, encourages and induces its customers of the Accused Instrumentalities to perform the methods claimed in the Asserted Patents. For example, Tesseract widely advertises its products and provides instructions for their use to treat health conditions and promote functions. (*See* https://tessmed.com/all-products/.) This includes supporting its various marketing claims by explicit reference to IntraBio's published clinical research relating to NALL. Furthermore, Tesseract provides "Suggested Use" instructions on its

website to induce its customers to perform the methods claimed in the Asserted Patents. (*See* https://tessmed.com/n-acetyl-l-leucine/.)

19. Defendants' infringement adversely impacts Plaintiffs in this District.

## **PLAINTIFFS' PATENTED INNOVATIONS**

20. IntraBio is a leader in the discovery and development of innovative and novel drugs for treatment of rare neurodegenerative diseases with unmet medical needs. IntraBio has also discovered treatments for other medical conditions, including migraines, restless leg syndrome, and decreased cognitive functions due to ageing.

21. In 2024, the United States Food & Drug Administration ("FDA") granted approval for AQNEURSA (N-acetyl-L-leucine or "NALL") for the treatment of NPC. Because N-acetyl-L-leucine had not previously received FDA approval, the FDA awarded five years of New Chemical Entity exclusivity. AQNEURSA also received seven years of Orphan Drug Exclusivity. As a consequence, no company may receive approval to market N-acetyl-L-leucine in the United States before September 24, 2031.

22. In addition, the use of leucine, acetyl-leucine, and enantiomeric forms of acetyl-leucine to treat multiple medical conditions is also protected by numerous patents owned by IntraBio.

23. The '067 Patent is entitled "Pharmaceutical compositions and uses directed to lysosomal storage disorders," and arises from a Patent Cooperation Treaty application filed on August 11, 2017, and was duly and legally issued by the United States Patent and Trademark Office ("USPTO") on August 2, 2022. A true and correct copy of the '067 Patent is attached as

Exhibit 1.[2]

24. The ’067 Patent discloses and claims novel methods of treating lysosomal storage disorders, which include Niemann-Pick type C disease, Tay-Sachs disease, the AB variant of Tay-Sachs disease, Sandhoff disease, Niemann-Pick type A disease, Niemann-Pick type B disease, Fabry disease, neuronal ceroid lipofuscinoses, Krabbe disease, Farber disease, Gaucher disease, metachromatic leukodystrophy, multiple sulfatase deficiency, mucolipidosis II, mucolipidosis III, MPS III, MPS VII, GM1 gangliosidosis, and aspartylglucosaminuria. The ’067 patent discloses and claims novel methods of treating such lysosomal storage disorders by administering therapeutically effective amounts of acetyl-leucine, including as a racemic mixture or as single enantiomeric forms thereof.

25. The ’434 Patent is entitled “Treatment for migraine,” was filed on June 25, 2018, and was duly and legally issued by the United States Patent and Trademark Office (“USPTO”) on October 18, 2022. A true and correct copy of the ’434 Patent is attached as Exhibit 2.

26. The ’434 Patent improves upon prior techniques for the treatment and prevention of migraines and associated symptoms of the same. The ’434 Patent discloses and claims novel methods for treating and preventing migraines and associated symptoms of migraines by administering a therapeutically effective amounts of acetyl-leucine, including racemic mixtures of or as an enantiomeric excess of a single enantiomer.

27. The ’279 Patent is entitled “Therapeutic agents for treating restless leg syndrome,” was filed on February 14, 2019, and was duly and legally issued by the USPTO on May 30, 2023. A true and correct copy of the ’279 Patent is attached as Exhibit 3.

[2] On October 9, 2024, IntraBio requested that the USPTO conduct a supplemental reexamination of the ‘067 patent. On March 31, the USPTO issued an intent to issue a reexamination certificate for the ‘067 patent. Upon issuance, IntraBio will seek to amend the Complaint to substitute the reexam patent.

28. The ’279 Patent improves upon prior techniques for the treatment and prevention of restless leg syndrome and associated symptoms of the same. The ’279 Patent discloses and claims novel methods for treating and preventing restless leg syndrome and associated symptoms of restless leg syndrome by administering a therapeutically effective amounts of leucine, acetyl-leucine, including in the form of racemic mixtures or as an enantiomeric excess of the L-enantiomer or D-enantiomer.

29. The ’792 Patent is entitled “Therapeutic agents for neurodegenerative diseases,” was filed on August 11, 2017, and was duly and legally issued by the USPTO on November 19, 2024. A true and correct copy of the ’792 Patent is attached as Exhibit 4.

30. The ’792 Patent improves upon prior techniques for the treatment and prevention of neurodegenerative diseases such as lysosomal storage disorders, Alzheimer’s disease, and Parkinson’s disease. The ’792 Patent discloses and claims novel methods for treating neurodegenerative diseases by administering a therapeutically effective quantity of acetyl-leucine, including as a racemic mixture or as an enantiomeric excess of a single enantiomer.

**ACCUSED INSTRUMENTALITY**

31. Tesseract offers and sells an N-acetyl-L-leucine (NALL) product that incorporates Plaintiffs’ patented technologies for lysosomal storage disorders, migraines, restless leg syndrome, decreased cognitive functions, and neurodegenerative diseases (“the Accused Instrumentality”). [3] NALL is the active pharmaceutical ingredient in IntraBio’s drug, AQNEURSA.

32. Indeed, Tesseract offers, sells, and uses a product marked “N-Acetyl-L-Leucine™,” *see* https://tessmed.com/n-acetyl-l-leucine/, for “powerful support for brain health,

[3] *See* https://tessmed.com/n-acetyl-l-leucine/ (“N-Acetyl-L-Leucine™” “NALL shows promising potential in various therapeutic areas, including neurological protection, cognitive function enhancement, anti-fatigue effects, and metabolic support.”).

cognitive function, and promotes [*sic*] healthy aging." (*See* https://tessmed.com/all-products/.) As stated on Defendants' website, "NALL promotes neuroprotection and cellular energy production, making it a targeted, high-quality choice for practitioners aiming to optimize neurological health and longevity." (*See* https://tessmed.com/n-acetyl-l-leucine/.) Tesseract further states that "NALL shows promising potential in various therapeutic areas, including neurological protection, cognitive function enhancement, anti-fatigue effects, and metabolic support. NALL can help restore leucine levels during aging, supports autophagy, and promotes cellular health." (*See id.*)

33. Illustrated below is an excerpt from Defendants' website and the "N-Acetyl-L-Leucine™" product being offered and sold:




(*See* https://tessmed.com/n-acetyl-l-leucine/.)

34. Furthermore, Tesseract recommends, promotes, and instructs and encourages its customers to use and administer its "N-Acetyl-L-Leucine™" product. Illustrated below is an excerpt from Defendants' website and the "N-Acetyl-L-Leucine™" product with specific instructions for use and administration:

**Suggested Use**

Take 2 capsules two times daily or as recommended by your healthcare practitioner.

Tamper Evident: Use only if bottle is sealed. Store tightly sealed in a cool, dry place.

If pregnant, consult your health-care practitioner before using this product.

(*See* https://tessmed.com/n-acetyl-l-leucine/.)

35. Tesseract has also disseminated marketing communications that recommend "prescribing" NALL for its therapeutic benefits, including neurological protection, cognitive function enhancement, anti-fatigue effects, and metabolic support. Illustrated below is an excerpt from a March 26, 2025, Tesseract marketing email:

> **Looking for a cellular "fountain of youth"?**
>
> **Prescribe N-Acetyl-L-Leucine (NALL) to restore leucine levels during aging and promote cellular health. NALL has a variety of therapeutic benefits, including neurological protection, cognitive function enhancement, anti-fatigue effects, and metabolic support.**

36. In support of its marketing claims, Defendants' March 26, 2025, email cites to published clinical research supported by IntraBio, including the pivotal clinical study to treat NPC that led to the FDA approval of AQNEURSA.

37. By referencing and advertising the treatments and therapeutic benefits disclosed in IntraBio's clinical research, Defendants are promoting, recommending, and encouraging medical providers and patients to use their unapproved NALL product as a substitute for IntraBio's FDA approved product.

**TESSERACT'S INFRINGEMENTS OF THE PATENTS-IN-SUIT**

38. Plaintiffs reallege and incorporate by reference the allegations of the preceding paragraphs of this Complaint.

39. Tesseract infringed and continues to infringe one or more claims of the Asserted Patents in violation of 35 U.S.C. § 271 in this District and elsewhere in the United States and will continue to do so.

40. IntraBio sent a cease-and-desist letter to Tesseract dated April 7, 2024. This letter informed Tesseract of the Asserted Patents and outlined Tesseract's infringement of the same. A true and correct copy of the cease-and-desist letter is attached as Exhibit 5.

41. Each claim in the '067, '434, '279, and '792 Patents recites an independent invention. No claim is representative of all claims in the '067, '434, '279, and '792 Patents.

42. Tesseract directly infringes at least one claim of the ’434, ’279, ’518, and ’792 Patents, either literally or under the doctrine of equivalents. For example, Tesseract manufactures, uses, offers for sale, sells, or imports into the United States Tesseract’s “N-Acetyl-L-Leucine™” Product, or induces or contributes to any such conduct, prior to the expiration of the ’067, ’434, ’279, and ’792 Patents, including any applicable exclusivities or extensions, Tesseract would infringe at least claim 1 of each of those patents under 35 U.S.C. § 271(a), (b), and/or (c), either literally or under the doctrine of equivalents.

43. Tesseract has actively induced and is actively inducing infringement of at least claim 1 of the ’434, ’279, ’518, and ’792 Patents with specific intent to induce infringement, and/or willful blindness to the possibility that its acts induce infringement, in violation of 35 U.S.C. § 271(b). For example, Tesseract encourages and induces customers to use its “N-Acetyl-L-Leucine™” product in a manner that infringes claim 1 of the ’434, ’279, ’518, and ’792 Patents at least by offering and providing instructions for performing a method that infringes claim 1 of the Asserted Patents when performed by the customer using the Accused Instrumentalities, and by engaging in activities relating to selling, marketing, advertising, promotion, installation, support, and distribution of the Accused Instrumentalities.

44. Tesseract has contributed to the infringement of least one claim of the ’067, ’434, ’279, ’518, and ’792 Patents, either literally or under the doctrine of equivalents, by offering to sell, and selling its NALL product in the United States knowing that it is especially made for use in practicing the methods claimed therein. NALL is not a staple article or commodity of commerce suitable for substantial non-infringing uses.

45. Plaintiffs have suffered and continue to suffer damages as a result of Tesseract’s infringement of the ’434, ’279, ’518, and ’792 Patents. Defendants are therefore liable to Plaintiffs

under 35 U.S.C. § 284 for damages in an amount that adequately compensates Plaintiffs for Defendants' infringement, but no less than a reasonable royalty.

46. On information and belief, after receiving notice of IntraBio's patents and Defendants' infringing activities, Defendants continued to offer for sale and sell their NALL product. As such, its continuing acts of infringement are willful.

47. Plaintiffs will be irreparably harmed by Defendants' infringing activities unless those activities are enjoined by this Court. Plaintiffs do not have an adequate remedy at law.

48. This is an exceptional case.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the following relief:

a) That this Court adjudge and decree that Defendants have been, and are currently, infringing each of the Asserted Patents;

b) That this Court award Plaintiffs damages to compensate for Defendants' past and future infringement of the Asserted Patents, through the life of the Asserted Patents;

c) That this Court award Plaintiffs pre- and post-judgment interest on such;

d) That this Court order an accounting of damages incurred by Plaintiffs from six years prior to the date this lawsuit was filed through entry of a final, non-appealable judgment;

e) That this Court determine that this patent infringement case is exceptional and award Plaintiffs their costs and attorneys' fees incurred in this action;

f) That this Court award increased damages under 35 U.S.C. § 284;

g) That this Court preliminarily and permanently enjoin Defendants from infringing any of the Asserted Patents;

h) That this Court order Defendants to:

(i) recall and collect from all persons and entities that have purchased any and all products found to infringe any of the Asserted Patents that were made, offered for sale, sold, or otherwise distributed in the United States by Defendants or anyone acting on their behalf;

(ii) destroy or deliver all such infringing products to Plaintiffs;

(iii) revoke all licenses to all such infringing products;

(iv) disable all web pages offering or advertising all such infringing products; and

(v) destroy all other marketing materials relating to all such infringing products;

h) That this Court, if it declines to enjoin Defendants from infringing any of the Asserted Patents, award damages for future infringement in lieu of an injunction; and

g) That this Court award such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs respectfully requests a trial by jury on all issues triable thereby.

*/s/ Kelly E. Farnan*
Kelly E. Farnan (#4395)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
302-651-7700
farnan@rlf.com

*Attorneys for Plaintiffs IntraBio Inc. and IntraBio Limited*

OF COUNSEL:

Alfonso Garcia Chan
King & Spalding LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764 4600

Paul A. Ainsworth
Sterne, Kessler, Goldstein & Fox P.L.L.C.
1101 K Street, NW, 10th Floor
Washington, DC 20005
(202) 371-2600

Dated: April 10, 2025